1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMAZON.COM INC; AMAZON.COM SERVICES LLC; OOFOS INC, <br><br> Plaintiff, <br><br> v. <br><br> GUANGMING TANG; KANG SUN; WENJIE FAN; XIAOFEI LIU; ZHI LI; YACHUN HE; HAIQING HU, <br><br> Defendant. | Case No. 2:23-cv-00898-TMC <br><br> ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

Before the Court is Plaintiffs Amazon.com, Inc, Amazon.com Services LLC (collectively, "Amazon"), and Oofos, Inc.'s ("Oofos") motion for default judgment. Dkt. 31. None of the Defendants have appeared in this action or responded to Plaintiffs' motion. For the reasons stated below, the Court GRANTS the motion.

## I.   BACKGROUND

Plaintiff Oofos sells athletic footwear through Amazon's online store, Amazon.com. *See* Dkt 8 ¶¶ 2–3. Plaintiffs' operative complaint[1] alleges that Defendants Guangming Tang, Kang

---

[1] Plaintiffs first amended complaint, Dkt. 8, is their operative complaint.

Sun, Wenjie Fan, Xiaofei Liu, Zhi Li, Yachun He, and Haiqing Hu[2] operated accounts on Amazon.com through which they sold counterfeit Oofos footwear. *See* Dkt. 8 ¶ 35, 45. Plaintiffs allege, on information and belief, that Defendants "operated in concert with one another in their advertising, marketing, offering, distributing, and selling of" the counterfeit products. *Id.* ¶ 45.

After discovering the operation and "verif[ying] Defendants' sale of counterfeit Oofos products," Amazon blocked Defendants' selling accounts. *Id.* ¶ 48. Plaintiffs filed this case on June 14, 2023. Dkt. 1. The first amended complaint raises claims for trademark counterfeiting and trademark infringement under 15 U.S.C. § 1114; False Designation of Origin and False Advertising under 15 U.S.C. § 1125(a); a Violation of Washington Consumer Protection Act, RCW 19.86.010, et seq.; and breach of contract. Dkt. 8 ¶¶ 50–85.

 Plaintiffs sought and were granted leave to serve Defendants through their email addresses, Dkt. 20, and did so on February 28, 2024, Dkt. 21. On April 18, 2024, Plaintiffs moved for default against Defendants after they failed to timely appear, Dkt. 22, which the Clerk of Court granted on April 23, 2024, Dkt. 24. Plaintiffs then filed this default judgment motion on June 14, 2024. Dkt. 31.

## II.   DISCUSSION

### A.   Jurisdiction

The Court first examines its jurisdiction when evaluating a motion for default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). First, the Court has federal question jurisdiction based on Plaintiffs' claims for trademark counterfeiting and infringement and false designation of origin and false advertising under 15 U.S.C § 1121 and 28 U.S.C. § 1338, respectively. The Court exercises supplemental jurisdiction over Plaintiffs' related claims for

---

[2] The amended complaint also names Hui Yang and "Does 1-10" as defendants, but on April 19, 2024, Plaintiffs voluntarily dismissed them from the case without prejudice. Dkt. 23.

1    violations of the Washington Consumer Protection Act and breach of contract pursuant to 28

2    U.S.C. §§ 1332 and 1367. Second, the Court has personal jurisdiction over Defendants because

3    they consented to the forum selection clause in their "Business Solutions Agreements" ("BSA")

4    with Amazon selecting state or federal court in King County, Washington. *See* Dkt. 8 ¶ 21; *Chan*

5    *v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994) ("[A] forum selection clause

6    alone could confer personal jurisdiction . . . [and] would be an additional basis for establishing

7    personal jurisdiction.") Defendants also directed their sales and other business conduct toward

8    Washington State in their dealings with Amazon, therefore establishing minimum contacts, *see*

9    *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945), and a reasonable anticipation of "being haled

10   into court" here. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Court has

11   jurisdiction over the subject matter and the parties.

> **B.      Default Judgment Standard**

12

13           Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil

14   Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to

15   appear or otherwise defend in an action. Fed. R. Civ. P. 55. In deciding motions for default

16   judgment, courts take "'the well-pleaded factual allegations' in the complaint 'as true,' 'except

17   those relating to the amount of damages.'" *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir.

18   2017) (first quoting *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); then

19   quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (internal citations

20   omitted)); Fed. R. Civ. P. 8(b)(6). The court also does not accept the truth of statements in the

21   complaint that amount to legal conclusions. *DIRECTV, Inc.*, 503 F.3d at 854. "[N]ecessary facts

22   not contained in the pleadings, and claims which are legally insufficient, are not established by

23   default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

24

The "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts weigh the following factors in deciding motions for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72; *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616–17 (9th Cir. 2016) (suggesting that district courts "weigh" the *Eitel* factors). District courts' decisions on motions for default judgment are discretionary. *See NewGen, LLC*, 840 F.3d at 616 ("We review . . . the grant of a default judgment for abuse of discretion."). Failure to establish the second and third factors is dispositive and requires denial of the motion. *See Cripps*, 980 F.2d at 1268 (vacating default judgment where "the default judgment [was] legally insupportable"); *United States ex rel. Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) (noting that "failure to satisfy the second and third *Eitel* factors is sufficient to deny a motion for default judgment").

### C.   Plaintiffs are entitled to Default Judgment.

For the following reasons, the Court agrees with Plaintiffs that the *Eitel* factors favor default judgment.

#### 1.   *Possibility of prejudice to Plaintiffs*

Under the first *Eitel* factor, the Court considers whether Plaintiffs will suffer prejudice if default judgment is not entered. *See, e.g.*, *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiffs filed suit in June 2023 (Dkt. 1) and no Defendant has responded or otherwise defended in this action. Plaintiffs would be prejudiced without entry of default

judgment because they would be left without legal remedy given Defendants' lack of response. *See, e.g.*, *Alliant Credit Union v. Williams*, No. CV18-8483-GW(PLAx), 2020 WL 10963955, at *4 (C.D. Cal. Feb. 13, 2020). The first *Eitel* factor weighs in favor of default judgment.

### 2.   *Substantive merits and sufficiency of the complaint*

The second and third *Eitel* factors, concerning the merits of the plaintiff's claim and the sufficiency of their complaint, are "often analyzed together." *See, e.g.*, *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo*, 238 F. Supp. 2d at 1175). These two factors weigh in favor of default judgment when the plaintiff's complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Courts cannot enter default judgment if the complaint fails to state a claim. *See Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004). Here, Plaintiffs assert they have established Defendants' liability as to all claims. The Court examines each claim in turn.

### a.   *Trademark infringement*

First, Oofos seeks entry of default judgment on its claim that Defendants infringed its trademarks in violation of the Lanham Act, 15 U.S.C. § 1114.

To state a claim for trademark infringement under the Lanham Act, Oofos must plausibly allege that Defendants used: "(1) a reproduction, counterfeit, copy or colorable imitation of plaintiff's registered trademark, (2) without its consent, (3) in commerce, (4) in connection with the sale, offering for sale, distribution or advertising of any goods, (5) where such use is likely to cause confusion, or to cause a mistake or to deceive." *Amazon v. Kurth*, No. C18-0353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019) (citing 15 U.S.C. § 1114(1)(2)).

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or

services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). When a defendant uses a counterfeit mark, courts presume a likelihood of consumer confusion. *See Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases). A "counterfeit" is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Id*.

Here, Oofos alleges that owns the registered trademarks nos. 4,140,410 and 4,407,860. Dkt. 8 ¶ 4. It asserts it conducted "test purchases" of products sold by Defendants and determined that they each bore a counterfeit Oofos trademark. *Id.* ¶ 43. Accepting these allegations as true, *Rozario*, 687 F. App'x at 569, the Court concludes it is likely that a reasonable consumer would have been deceived by Defendants into confusing their counterfeit merchandise with genuine Oofos products. *See Coach*, 2013 WL 5406220, at *3. The second and third *Eitel* factors therefore weigh in favor of entry of default judgment on Oofos's claim against Defendants for trademark infringement in violation of 15 U.S.C. § 1141(1)(1).

### b.  *False designation of origin*

Second, Oofos and Amazon seek entry of default judgment on their claims for Defendants' false designation of the origin of products or services under 15 U.S.C. § 1125(a). A claim for false designation of origin must plausibly allege that a defendant: "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007)). Generally, "[a]lthough there are some differences between a trademark infringement claim under § 1114 and a false designation of origin claim

under § 1125(a), 'the analysis under the two provisions is oftentimes identical.'" *Entrepreneur Media, Inc. v. Doe*, No. 8:19-cv-01706-JLS-JDE, 2020 WL 6811475, at *4 (C.D. Cal. Oct. 21, 2020).

"[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that . . . occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). A plaintiff need not be the owner of the infringed trademark to prevail on the claim. *Id.*

Both Oofos and Amazon have sufficiently alleged and proven their false designation claims. As discussed above, *supra* Section 2.C.2.a., Defendants advertised and sold counterfeit Oofos-branded products through Amazon.com selling accounts. Plaintiffs allege this conduct misled consumers into purchasing counterfeit Oofos merchandise believing that they were genuine products. Dkt. 8 ¶¶ 5–6, 60–61. Accepting Oofos's allegations as true, *Rozario*, 687 F. App'x at 569, the Court concludes that Oofos plausibly states a claim for false designation given that counterfeit versions of its products were falsely presented as genuine to consumers whose misdirected purchases affected sales of genuine merchandise. The Court also finds that Amazon states a plausible false designation claim. While Amazon is not an owner of the Oofos trademarks, it was deceived by Defendants who presented their counterfeit Oofos merchandise as authentic inventory for their Amazon.com selling accounts—causing Amazon to allow counterfeit products to be sold through its website, leading to consumer harm and plausible associated reputational and financial damage to Amazon. The Court concludes that Oofos and Amazon have stated claims for false designation and the second and third *Eitel* factors weigh in favor of entering default judgment on these claims.

c.   *Washington Consumer Protection Act*

Third, Plaintiffs seek entry of default judgment on their claims for Defendants' violations of the Washington Consumer Protection Act. A Washington Consumer Protection Act claim is "substantially congruous" to federal claims under the Lanham Act, *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1101-RSM, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020), and requires a plaintiff to show "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Id.* (citing *Lahoti v. Vericheck, Inc.*, No. C06-1132-JLR, 2007 WL 2570247, at *9 (W.D. Wash. Aug. 30, 2007), *aff'd*, 586 F.3d 1190 (9th Cir. 2009)). Given the above discussion, *supra* Sections 2.C.2.a.–b., the Court finds that both Oofos and Amazon have met the similar requirements of the Lanham Act and Washington Consumer Protection Act violations alleged— where deceptive commercial activity led to business injury. *See BBC Grp.*, 2020 WL 758070, at *2; *Amazon v. Kurth*, 2019 WL 3426064, at *2; *Luxul Tech.*, 78 F. Supp. 3d at 1170. The Court finds that the second and third *Eitel* factors weigh in favor of entering default judgment on Plaintiffs' Washington Consumer Protection Act claims.

### d. Breach of contract

Finally, Amazon Services LLC moves for default judgment on its breach of contract claim against all Defendants. To prove a claim for breach of contract, the plaintiff "[g]enerally . . . must prove a valid contract between the parties," *Lehrer v. State, Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516 5 P.3d 722 (2000), and show four elements: duty, breach, causation, and damages. *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1171 (W.D. Wash. 2014), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017); *Baldwin v. Silver*, 165 Wn. App. 463, 473, 269 P.3d 284

(2011). "For any breach to arise, there must first be some duty to perform." *Hard 2 Find Accessories, Inc.*, 58 F. Supp. 3d at 1171.

Amazon Services LLC alleges that Defendants agreed to the BSAs with Amazon, which "specifically identifies the sale of counterfeit goods as 'deceptive, fraudulent, or illegal activity' in violation of Amazon's policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct." Dkt. 8 ¶¶ 36–37. The BSA requires the seller to defend, indemnify, and hold Amazon harmless against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." *Id.* ¶ 37. The agreement also requires that "the information and documentation [sellers] provide to Amazon in connection with their selling accounts—such as identification, contact, and banking information—will, at all times, be valid, truthful, accurate, and complete." *Id.* ¶ 40.

The Defendants also agreed, by way of the BSA, to Amazon's Anti-Counterfeiting Policy, which "expressly prohibits the sale of counterfeit goods in the Amazon Store." *Id.* ¶ 38. The policy provides, as an example of a "prohibited product," "[p]roducts that infringe another party's intellectual property rights." *Id.* ¶ 39.

Amazon Services LLC asserts that Defendants breached the BSA and Anti-Counterfeiting Policy by selling counterfeit Oofos products, which it alleges infringed Oofos's intellectual property rights, *id.* ¶ 82, and "by providing Amazon with false, fraudulent, or otherwise inaccurate identification, contact, and/or banking information in connection with their Selling Accounts," *id.* ¶ 84. It also alleges that Defendants' failure to reimburse Amazon for "full refunds" that Amazon issued to customers who purchased Defendants' counterfeited products violated the contract. *Id.* ¶ 49. These allegations sufficiently establish that Defendants had a duty to abide by the above-mentioned policies, and that they breached their obligations under the BSA and incorporated policies; Amazon Services LLC has sufficiently established the first two

elements of their claim. Moreover, the allegations that Defendants did not reimburse Amazon for money it had to pay out as a result of Defendants' sales of counterfeited items show that Defendants' conduct caused harm to Amazon. The Court finds that the second and third *Eitel* factors weigh in favor of entering default judgment on Amazon Services LLC's breach of contract claim.

               *3.*       *The sum of money at stake*

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77; *see also Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) ("[C]ourts take into account the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct." (internal quotation marks omitted)). The Court assesses whether the amount of money sought is proportional to the harm caused by Defendants' conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Plaintiffs seek a total of $3,127,316 in statutory damages against Defendants, Dkt. 31-1 at 2, based on statutory damages of not less than $1,000 and no more than $2,000,000 per trademark affected. *See* 15 U.S.C. §§ 1117(c)(1)–(2). While the sum is substantial, Defendants' conduct also resulted in a substantial estimated minimum of $1,041,476.60 in counterfeit sales, Dkt. 32 at 23 ¶ 3, and was characterized by willful infringement and misleading commercial activity. The Court concludes that Plaintiffs' requested statutory damages are not unreasonable relative to the scale and seriousness of the conduct alleged, taking place over two years and spread across several defendants, and thus do not weigh against entry of default judgment.

For its breach of contract claim, Amazon Services LLC also seeks the following in actual damages for sales made by selling accounts controlled by certain Defendants that they did not reimburse Amazon Services for, as required by their contractual agreement: awards of $210,937 against Defendant GuangMing Tang; $175,647 against Defendant Kang Sun; $41,994 against Defendant Wenjie Fan; $116,605 against Defendant Xiaofei Liu; $46,517 against Defendant Zhi Li; $8,115 against Defendant Yachun He; and $37,013 against Defendant Haiqing Hu. Dkt. 32 ¶ 4. The requested actual damages are directly proportional to the individual Defendants' conduct and resulted from their breach.

Additionally, "the substantial sums that are at stake and the seriousness of the alleged misconduct" also make this factor weigh in favor of default judgment. *See Amazon.com, Inc. v. Li*, No. 2:21-cv-01512-TL, 2024 WL 1832466, at *8 (W.D. Wash. Apr. 26, 2024).

For the above reasons, this factor weighs in favor of default judgment.

### 4. The possibility of dispute concerning material facts

As for the fifth *Eitel* factor, no genuine issue of material fact exists, and the factor does not weigh against default judgment. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Here, all Defendants are in default. *See* Dkt. 24.

### 5. Whether default was due to excusable neglect

Under the sixth *Eitel* factor, the Court examines whether Defendants' default resulted from excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiffs have provided evidence that Defendants were served, *see* Dkt. 21, 26, and there is no evidence in the record to support a finding that Defendants' failure to respond is the result of excusable neglect. Accordingly, the sixth *Eitel* factor weighs in favor of default judgment.

6.     *Policy favoring decisions on the merits*

Finally, the seventh *Eitel* factor favors that courts decide cases "upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. When a defendant fails to appear or defend themselves in an action, however, the policy favoring decisions on the merits is not dispositive. *See PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, Federal Rule of Civil Procedure 55 allows courts to issue a default judgment if a defendant fails to appear or defend. *Id.* The Court finds that the seventh *Eitel* factor does not weigh against default judgment here.

**D.     Plaintiffs are entitled to remedies.**

Since the Court finds the *Eitel* factors weigh in favor of entry of default judgment against Defendants, the Court now turns to remedies. *See TeleVideo Sys.*, Inc., 826 F.2d at 917– 18. The Court does not consider defaulting defendants to have admitted the facts alleged concerning damages. *Id.* at 917. Instead, plaintiffs moving for default judgment should submit "a declaration and other evidence establishing [their] entitlement to a sum certain and to any nonmonetary relief sought." Local Rules W.D. Wash. 55(b)(2).

1.     *Statutory damages*

"[S]tatutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes." *Amazon.com, Inc. v. Dong*, No. C23-159, 2024 WL 775900 (W.D. Wash. Feb. 26, 2024) (quoting *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023)). "The plaintiff, however, is not entitled to a windfall." *Li*, 2024 WL 1832466, at *8.

Oofos seeks a total of $3,127,316 in statutory damages against Defendants, Dkt. 31-1 at 2. Where there is willful use of a counterfeit mark, courts may award statutory damages between $1,000 and no more than $2,000,000 per trademark affected. *See* 15 U.S.C. §§ 1117(c)(1)–(2).

1

Because the Court assumes the truth of Plaintiffs' allegations of willful infringement, *see*

2

Dkt. 8 ¶ 46, it grants the statutory damages sought. *See Derek Andrew, Inc. v. Poof Apparel*

3

*Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The district court entered default and Poof concedes

4

that its default occurred with respect to a complaint that pled wilfulness. Thus, all factual

5

allegations in the complaint are deemed true, including the allegation of Poof's willful

6

infringement of Andrew's trademarks."). The Court finds the sum to be reasonably calculated

7

and supported by written declaration, *see* Dkt. 32 at 3–4, and accordingly grants the statutory

8

damages sought.

9

　　　　　　　　　*2.　　Actual Damages*

10

　　　"The general measure of damages for breach of contract is that the injured party is

11

entitled to: (1) recovery of all damages that accrue naturally from the breach, and (2) to be put

12

into as good a pecuniary position as he would have had if the contract had been

13

performed." *Entry Select Ins. Co. v. Silver Arrow Cars, Ltd.*, No. C19-0598, 2020 WL 1847749

14

(W.D. Wash. Apr. 13, 2020) (citing *Diedrick v. Sch. Dist. 81*, 87 Wn.2d 598, 610 (1976)).

15

　　　Amazon Services LLC seeks awards of $210,937 against Defendant GuangMing Tang;

16

$175,647 against Defendant Kang Sun; $41,994 against Defendant Wenjie Fan; $116,605 against

17

Defendant Xiaofei Liu; $46,517 against Defendant Zhi Li; $8,115 against Defendant Yachun He;

18

and $37,013 against Defendant Haiqing Hu. Dkt. 32 ¶ 4. These are the amounts Amazon

19

Services LLC paid consumers who bought counterfeit goods sold by these Defendants' accounts.

20

*See id.* Because Defendants agreed to reimburse Amazon for these payments, the Court finds

21

these damages to be appropriate and just.

22

　　　　　　　　　*3.　　Permanent Injunction*

23

　　　Plaintiffs also seek a permanent injunction enjoining Defendants from:

24

　　　　　　　　a. selling counterfeit or infringing products in Amazon's stores;

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 13

b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product or service using any simulation, reproduction, counterfeit, copy, or colorable imitation of Oofos's brand or trademarks, or which otherwise infringes Oofos's intellectual property, in any store or in any medium; and

d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

Dkt. 8 § VI(A). The Lanham Act authorizes the Court to "grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137–38 (9th Cir. 2006) (internal quotations omitted). Similarly, the Washington Consumer Protection Act also allows parties to seek a permanent injunction to prevent further violations. RCW 19.86.090. A permanent injunction is "an act of equitable discretion" such that courts should analyze "traditional equitable principles" before granting. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 288, 391–92 (2006). A plaintiff seeking permanent injunction should satisfy the following four-factor test before a court may grant such relief ("equitable factors"): that (1) the plaintiff has suffered an irreparable injury, (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted, and (4) the public interest is not disserved by a permanent injunction. *See id.* at 391.

First, when "infringement is shown, irreparable injury is generally presumed in a trademark case." *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012); 15 U.S.C. § 1116 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction"). Since the Court therefore presumes irreparable

injury under 15 U.S.C. § 1116, and the defaulting Defendants fail to provide any rebuttal of such presumption, the first of the equitable factors is met.

Second, as Plaintiffs note, this Court previously found that the second factor favored the plaintiffs in a case where the plaintiffs requested a similar injunction because "the reputational damage caused by counterfeiting is difficult to quantify and Defendants' failure to respond suggests their infringing activities may continue. The second equitable factor also weighs in favor of injunction, so that repetitive lawsuits will be unnecessary." *Amazon.com Inc. v. Zhi*, 2024 WL 943465, at *5–7 (W.D. Wash., Mar. 4, 2024). The Court comes to the same conclusion here.

Third, the balance of hardships also supports the injunction sought by Plaintiffs. Without an injunction, Defendants could continue selling counterfeit Oofos products and cause continued hardship for Plaintiffs whether financially or through requiring additional lawsuits to enforce Plaintiffs' rights.

Fourth, a permanent injunction serves the public interest by protecting the rights of trademark holders and minimizing consumer confusion and the risk of purchasing fraudulent merchandise. *See Amazon.com, Inc. v. White*, No. C20-1773-JHC, 2022 WL 1641423, at *7 (W.D. Wash. May 24, 2022) (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014)); *Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694-MJP, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021)).

Accordingly, the Court grants the requested permanent injunction.

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs motion for default judgment (Dkt. 31), and JUDGMENT is entered against Defendants on Oofos's Cause of Action for Trademark Counterfeiting and Trademark Infringement (15 U.S.C. § 1114), Oofos's Causes of

Action for False Designation of Origin and False Advertising (15 U.S.C. § 1125(a)), Amazon's Cause of Action for False Designation of Origin (15 U.S.C. § 1125(a)), Plaintiffs' Cause of Action for Violation of the Washington Consumer Protection Act (RCW 19.86.010 et seq.), and Amazon.com Services LLC's Cause of Action for Breach of Contract.

The Court awards Oofos statutory damages in the amount of $3,127,316 based on Defendants' willful violations of the Lanham Act, as follows:

a. An award of $1,021,733 against GuangMing Tang, for counterfeit sales from the following Selling Accounts: "BH- Boston" and "Briceno LLC";

b. An award of $852,151 against Kang Sun, for counterfeit sales from the following Selling Accounts: "BricenoLLC." and "Empressiv Glow Hydration and Wellness, LLC.";

c. An award of $208,520 against Wenjie Fan, for counterfeit sales from the following Selling Account: "True LLC";

d. An award of $524,631 against Xiaofei Liu, for counterfeit sales from the Selling Account: "Antonious New";

e. An award of $240,436 against Zhi Li, for counterfeit sales from the Selling Accounts: "Angel Seller" and "Briceno LLC."; f. An award of $101,975 against Yachun He, for counterfeit sales from the Selling Account: "Angel Seller";

g. An award of $174,980 against Haiqing Hu, for counterfeit sales from the Selling Account: "Premier Outlets."

The Clerk is directed to enter judgment against each Defendant and in favor of Oofos in the amounts set forth above.

The Court awards Amazon its actual damages for Defendants' breaches of contract as follows:

a. An award of $210,937 against Defendant GuangMing Tang for Amazon's damages arising from the counterfeit sales from the following Selling Accounts: "BH- Boston" and "Briceno LLC";

b. An award of $175,647 against Defendant Kang Sun for Amazon's damages arising from the counterfeit sales from the following Selling Accounts: "BricenoLLC" and "Empressiv Glow and Wellness, LLC";

c. An award of $41,994 against Defendant Wenjie Fan for Amazon's damages arising from the counterfeit sales from the following Selling Account: "True LLC";

d. An award of $116,605 against Defendant Xiaofei Liu for Amazon's damages arising from the counterfeit sales from the following Selling Account: "Antonious New";

e. An award of $46,517 against Defendant Zhi Li for Amazon's damages arising from the counterfeit sales from the following Selling Accounts: "Angel Seller" and "Briceno LLC";

f. An award of $8,115 against Defendant Yachun He for Amazon's damages arising from the counterfeit sales from the following Selling Account: "Angel Seller"; and

g. An award of $37,013 against Defendant Haiqing Hu for Amazon's damages arising from the counterfeit sales from the following Selling Account: "Premier Outlets."

The Clerk is directed to enter judgment against each Defendant and in favor of Amazon for the amounts set forth above.

Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:

a. selling counterfeit or infringing products in Amazon's stores;

b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Oofos's brand or trademarks, or which otherwise infringes Oofos's intellectual property, in any store or in any medium; and

d. assisting, aiding, or abetting any other person or business entity in engaging in or in performing any of the activities referred to in subparagraphs (a) through (c) above.

The Court hereby retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendants' last known email addresses registered with the payment service provider Payoneer, Inc., which Plaintiffs used to complete service.


Dated this 24th day of July, 2024.


Tiffany M. Cartwright
United States District Judge


ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 18